## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**BARRY HOBSON**
**9623 Reiker Drive**
**Upper Marlboro, MD 20774**

　　*Plaintiff*,

　　**v.**

**WASHINGTON TEACHERS' UNION**
**LOCAL 6**
**1239 Pennsylvania Avenue SE**
**Washington, DC 20003**

<u>Serve</u>**: Resident Agent**
　　　**Elizabeth Davis**
　　　**3113 Channing Street, NE**
　　　**Washington, DC 20018**

and

**DOROTHY EGBUFOR**
**6321 7th Street, NW**
**Washington, DC 20011**

**and**

**ELIZABETH A. DAVIS**
**3113 Channing Street, NE**
**Washington, DC 20018**

　　*Defendants*.

Civil Action No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY DEMAND

　　COMES NOW, the Plaintiff, Barry Hobson, by and through his attorneys, Brian J.

Markovitz and Matthew E. Kreiser of the law firm Joseph Greenwald & Laake, P.A., and brings

this civil suit against the Defendants the Washington Teachers' Union Local 6 ("WTU"),

Dorothy Egbufor, and Elizabeth A. Davis and as cause states the following:

## NATURE OF THIS ACTION

1.      This is an action pursuant to and the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.* (DCHRA), alleging discriminatory treatment based upon the protected class of sexual orientation and illegal retaliation against Plaintiff during his employment as a receptionist/office assistant for Defendant WTU.

2.      As explained below, Defendants blatantly and obviously discriminated against Plaintiff in emails that negatively referred to his sexual orientation and negatively referred to homosexuals in general. And, these emails directly tied employment decisions concerning Plaintiff, including his termination, to his sexual orientation in direct violation of the DCHRA.

3.      Defendant WTU discriminated and retaliated against Plaintiff in violation of the DCHRA. Defendant Egbufor, the former Chief of Staff for Defendant WTU, directly discriminated and retaliated against Plaintiff and aided and abetted and condoned the discriminatory conduct that Plaintiff received from the other Defendants in violation of the DCHRA. Defendant Davis is the current President of Defendant WTU and was the President of WTU during Plaintiff's entire tenure. Defendant Davis directly discriminated and retaliated against Plaintiff and aided and abetted and condoned the discriminatory and retaliatory conduct that Plaintiff received from the other Defendants in violation of the DCHRA.

## PARTIES

4.      The Plaintiff, Barry Hobson, is a homosexual who lives in the state of Maryland, and during the events described in this complaint, worked and was discriminated against because of his sexual orientation in the District of Columbia while working for Defendant WTU.

5.      Plaintiff is the proper plaintiff in this matter as he was an "employee" as defined within the meaning of the District of Columbia Human Rights Act, D.C. Code § 2-1401.02(9) for Defendants.

6.      Defendant WTU is a "labor organization" as defined by District of Columbia

Human Rights Act, D.C. Code § 2-1401.02(15), headquartered in the District of Columbia at

1239 Pennsylvania Avenue, SE, Washington, DC 20003.

7.      Defendant Egbufor was an employee of Defendant WTU but was also the direct

supervisor of Plaintiff.  Defendant Egbufor is a resident of the District of Columbia residing at

6321 7th Street, NW, Washington, DC 20011

8.      Defendant Davis is the current President of WTU and was the President of WTU

during Plaintiff's entire tenure.  Defendant Davis is a resident of the District of Columbia,

residing at 3113 Channing Street, NE, Washington, DC 20018.

9.      Defendants Davis and Egbufor are an "employer[s]" within the meaning of the

District of Columbia Human Rights Act, D.C. Code § 2-1401.02(10) as "person[s] acting in the

interest of [an] employer," and in their roles as President and former Chief of Staff for Defendant

WTU and as the individuals directly initiating and/or indirectly condoning the illegal

discriminatory and retaliatory conduct.  *E.g. Zelaya v. UNICCO Serv. Co.*, 587 F. Supp. 2d 277,

284-85 (D.D.C. 2008); *Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 73 (D.D.C. 2012).

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the

parties are from different states and the amount in controversy exceeds $75,000.00.  Plaintiff is a

resident of the State of Maryland. WTU is a non-profit corporation registered in the District of

Columbia.  Defendants Egbufor and Davis are residents of the District of Columbia.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial

part of the events or omissions giving rise to the claim occurred herein.

12.     Plaintiff has exhausted all applicable administrative remedies by filing with the

District of Columbia Office of Human Rights (DCOHR) on or about February 26, 2017 in the

midst of the incidents in this matter taking place and by withdrawing his case from DCOHR in

September of 2018 shortly before filing this matter.

## FACTS COMMON TO ALL CLAIMS

13.     Plaintiff was employed at WTU from on or about January 15, 2017 to on or about

April 3, 2017 as a receptionist/office assistant.

14.     Immediately after starting at his position at WTU, Plaintiff submitted new-hire

paperwork that clearly indicated that he was in a same-sex relationship and his sexual orientation

as he listed his then fiancé, now husband, Timothy Savoy, as his beneficiary, emergency contact,

and on other personnel documents.

15.     On or about January 26, 2017, Defendant Egbufor emailed Plaintiff to inform him

that she would begin processing his benefits paperwork so that he could obtain benefits effective

February 1, 2017.  Defendant Egbufor also noted that she had already directed staff to start

Plaintiff's dental insurance coverage so that it would begin on February 1, 2017.

16.     Shortly after submitting his paperwork, on or about January 31, 2017, Plaintiff

had a disturbing phone call with Defendant Egbufor that she initiated about Plaintiff's benefits.

Defendant Egbufor said that she saw "Timothy" listed on the benefits documents.  Defendant

Egbufor then asked, "Exactly who is he to you?"  Plaintiff responded, "my fiancé."  Prior to

abruptly hanging up on Plaintiff, Defendant Egbufor said in a tone of disgust with a raised voice,

"Your fiancé, ok Barry goodbye."  Then, she immediately hung up.

17.     Later on the evening of that same day, on or about January 31, 2017, after

Plaintiff went home from work, consistent with the WTU Handbook, Plaintiff emailed WTU

President Elizabeth Davis requesting to meet with her.  Plaintiff specifically detailed his

conversation with Defendant Egbufor to discuss Defendant Egbufor's negative reaction to him

being a homosexual.  Plaintiff specifically explained that the call with Defendant Egbufor was

4

"very disturbing," and detailed exactly what Defendant Egbufor said and did upon learning

Plaintiff was engaged to a man.  He further stated that he "want[ed] to ensure [he] d[id]n't begin

to experience any type of discriminatory treatment as a result of [his] sexual orientation being

exposed.  [Defendant Egbufor] seemed very disgruntled when she disconnected the call and this

alarms me."  Plaintiff received no response to his request from Defendant Davis to discuss this

matter further.

18.     This email with email addresses and the header and footer redacted is produced

below:

---

**Request to Meet..**

From: Barry Hobson <​                  n>
Date: Tue, Jan 31, 2017 at 07:58 PM
Subject: Request to Meet..
To: Elizabeth Davis <​                 m>

Good evening President Davis,

I would like to set up a time for you and I to meet.

I received a very disturbing call from Dorothy Egbufor, Chief of Staff, today and it sends very alarming
concern.

Dorothy called and asked about my new hire paperwork and who was listed. When I indicated that,
Timothy Savoy, listed in my paperwork was my fiancé, she disconnected the call in disgust - "Your Fiancé"
Ok Barry goodbye.

While, I could be overacting , I want to ensure I don't begin to experience any type of discriminatory
treatment as a result of my sexual orientation being exposed. Dorothy seemed very disgruntled when she
disconnected the call and this alarms me.

Per our WTU handbook, any concerns of this nature are to be bought to your attention for investigation and
review. I am happy to also note our handbook lays out a very precise and detailed policy against any such
discrimination that could occur against me by now exposing my sexual orientation, however; I would like to
meet at your earliest convenience to discuss and document this matter.

I look forward to meeting with you.

In Solidarity,

Barry Hobson

---

19.     Importantly, Plaintiff followed the reporting procedure at Defendant WTU.  The

WTU Handbook states that: "[i]f you are not satisfied after you speak with the Chief of Staff or

if you feel that you cannot speak to the Chief of Staff, discuss your concern with the

President…."

5

20.     For example, after the January 31, 2017 phone call, on the occasions that Defendant Egbufor would be at the WTU office, she would talk to all employees but purposefully ignore Plaintiff despite his position as receptionist and being the first person in the lobby area that people coming into Defendant WTU's headquarters would see.  Plaintiff, in fact, would greet Defendant Egbufor as he did everyone at the front desk, and she would simply walk right past him without acknowledging him.  Plaintiff noticed that Defendant Egbufor did not fail to greet other employees.

21.     The rudeness by Defendant Egbufor was also noticed by others in the office.  In fact on one occasion, Jacqueline Hines, the Treasurer of Defendant WTU, saw Defendant Egbufor walk past Plaintiff rudely and not respond back to his greeting of her.  In front of Plaintiff, Ms. Hines said to Defendant Egbufor that she cannot just walk past Plaintiff and not acknowledge him.  Defendant Egbufor said curtly, "I have nothing to say to him."  The two woman then walked out of earshot of Plaintiff.  Shortly thereafter, Ms. Hines returned and told Plaintiff that she had a discussion with Defendant Egbufor explaining she cannot ignore Plaintiff but that Defendant Egbufor insisted that she would not greet Plaintiff.

22.     On or about February 1, 2017, Plaintiff was delegated the responsibility of helping to coordinate the registration and collection of payment for a "Shared Vision" conference hosted by WTU with General Vice President ("GVP") Jacqueline Pogue Lyons.  This program was being overseen by GVP Lyons.  There were some problems with registration for some participants in this program and confirming that payments had been properly made by them.  However, these issue were not Plaintiff's responsibility as he was simply executing orders from GVP Lyons as she directed him.

23.     After the phone call that took place on or about January 31, 2017 with Defendant Egbufor, Plaintiff experienced harassment from Defendant Egbufor multiple times each week,

much of which is detailed below.

24.     That same day, on or about February 1, 2017, the day after the abrupt phone call

with Defendant Egbufor and Plaintiff's request to meet with Defendant Davis, Defendant

Egbufor sent an email to Plaintiff and copied WTU President Elizabeth Davis and GVP Pogue

Lyons indicating that Plaintiff's actions on the program were "unethical and annoying," even

though he had acted in accordance with GVP Pogue Lyons' instructions.

25.     Around this time, February 1, 2017, Plaintiff was supposed to be put on WTU's

health and dental plans.  When that did not happen, Plaintiff began making inquiries as to why he

was not on them to Marlette Dixon, a contractor who handles certain accounting matters for

Defendant WTU, including overseeing the administration of those plans.  Ms. Dixon stated that

she would get back to him.  When Ms. Dixon did get back to Plaintiff, she told him that

Defendant Egbufor had told her to tell him to apply for Medicaid.  Plaintiff then began to make

inquiries directly to Defendant Egbufor, but she never responded.

26.     On or about February 6, 2017, Plaintiff was instructed by Defendant Egbufor to

obtain and personally pay for a 10-year criminal background check after his employment began

because according to her, "WTU failed to conduct a criminal background check."  To the best of

Plaintiff's knowledge, Defendant Egbufor did not order this background check for other

employees and no other employees, to the best of his knowledge, were asked to pay out of

pocket for it.  In fact, Duanna Petrus, a board member, who sits on Defendant WTU's personnel

committee, told Plaintiff that Defendant WTU, to the best of her knowledge, had never required

anyone to pay for a background check.

27.     It was around this time that Plaintiff became certain that Defendant Egbufor was

looking for a reason to terminate him because of his sexual orientation.

28.     On or about February 8, 2017, Defendant Egbufor continued to denigrate Plaintiff

in an email to Defendant Davis stating that Plaintiff responded to her directions "with opposition" and "as if my instructions don't matter to him.  This is a serious issue."  Plaintiff had no idea what she was referencing as he had never acted contrary to her instructions, ignored them, or opposed them.

29.     On or about February 9, 2017, Defendant Davis authorized Plaintiff to be trained by Jasmine Wright, WTU Membership Services Coordinator, on the Bswift software, the software that WTU used to store membership information.  Entering, editing, and updating membership lists was part of Plaintiff's duties and so he needed access to and training on this software.

30.     On or about that same day, February 9, 2017, Defendant Egbufor sent an email to Defendant Davis and the WTU Personnel Committee claiming she witnessed "unappealing behaviors and comments from [Plaintiff]" which was "unprofessional" and "disrespectful." Defendant Egbufor further falsely alleged that Plaintiff personally attacked her character and "willfully neglected" his job responsibilities. In this same email, Defendant Egbufor falsely alleged that forty (40) people had not paid for the Shared Vision conference as a result of Plaintiff's actions, which was simply not true.  These comments were in response to Plaintiff's email carefully explaining that he had acted in accordance with GVP Pogue Lyons' instructions and in which he suggested potential improvements to the registration and payment process in order to make it run more smoothly.

31.     Subsequently, even though it was not Plaintiff's responsibility and he was again only following the instructions he was given by GVP Lyons, Plaintiff clarified that only five or six registrants had not paid and that Defendant Egbufor's assessment of forty registrants was simply not correct.  In response, Defendant Egbufor threatened Plaintiff in an email with disciplinary action and falsely stated that Plaintiff had poor tone and behavior and attitude

problems.

32.    On or about February 10, 2017, Plaintiff wrote an email directly to Defendant Davis with a copy sent to Defendant Egbufor regarding medical and dental insurance as those benefits were supposed to start for him on February 1, 2017. Plaintiff noted that he had "inquired to Dorothy [Defendant Egbufor] on a number of occasions and she ha[d] not responded." He indicated that he had followed Ms. Dixon's instructions as ordered by Defendant Egbufor to apply for D.C. Medicaid. He further indicated that he was having issues applying for Medicaid as he could not answer the questions accurately and receive coverage because Defendant WTU was supposed to provide him with medical coverage. He specifically asked of Defendant Davis, "Can you please help me gain clarity as to why I am having these issues? As a result. I am still with no insurance and nobody can tell me why I don't." He also explained that he had spoken with other WTU employees, and they had informed him that "they never had to apply for benefits this way." Defendant Davis never responded to this email.

33.    This email with email addresses redacted is produced below:

Medical - Dental

Barry Hobson

Fri 02/10/2017 11:43 AM

To: <███████████████████>; Dorothy Egbufor

Good morning President Davis,

I am a bit concerned about my medical benefits. I was told I would have medical and dental benefits 02.01.2017 as part of my employment agreement. I have completed all of my paperwork and I have yet to get any information about my coverage. I have inquired to Dorothy on a number of occasions and she has not responded.

Also, I was instructed to apply for coverage via DC Health link by Marlette per Dorothy. When I attempted to apply, I was met with options for DC Medicaid which I don't have to accept since WTU has a group plan I was promised. When I inquired to Jasmine, Devin, and Solis, I was told they never had to apply for benefits this way. Can you please help me gain clarity as to why I am having these issues? As a result, I am still with no insurance and nobody can tell me why I don't.

I know you're busy with contract issues and your time is limited but this is important and I need to have it addressed right away.

In Union Solidarity,

Barry Hobson

9

34.     Around this time, Plaintiff began to be very seriously distressed by the treatment

he was receiving at work, especially from Defendant Egbufor.  As a result, on or about February

14, 2017, in accordance with the WTU Handbook's requirement that the President (Defendant

Davis) should address issues with the Chief of Staff, Plaintiff again emailed Defendant President

Davis seeking assistance.

35.     In this February 14, 2017 email, Plaintiff attempted *once again* to arrange a

meeting with Defendant Davis to address Defendant Egbufor's verbal abuse and harassment

because of his sexual orientation.  Plaintiff emphasized in the email that he was "requesting a

meeting to discuss issues of verbal abuse and harassment from our Chief of Staff, Dorothy

Egbufor."  In the email, Plaintiff admitted that he was having trouble sleeping at night, had lost

his appetite, and feared coming to work because his job appeared to be in jeopardy because of

Defendant Egbufor.  President Davis simply replied, "I will schedule a meeting this week.

Contract talks tomorrow."

36.     On or about February 15, 2017, Defendant Egbufor sent what she termed a

"Highly Confidential and Privileged"[1] email to Defendant Davis suggesting that they "confer"

about permanently denying Plaintiff medical benefits because "he confirmed he engages in

same-sex intimacy."  She then wrote that "[n]ever in WTU's past have we allowed any

individual to participate on our group policy 'openly gay' and I don't think this should be an

exception."

37.     In this email, Defendant Egbufor uses Plaintiff's sexual orientation to falsely

claim that the medical plan that Defendant WTU provides to its employees will have a

"substantial premium/rate increase" for WTU's "regular employees[,]" if Plaintiff and other

members of the LGBT community are allowed to participate because they have AIDS, HIV and

---

[1] This email is not protected by attorney-client privilege or any legally recognized privilege.

STDs[.]"  Specifically she wrote:

> Market data shows a substantial premium/rate increase when allowing the LGBT
> community to participate in employer sponsored plans, for various reasons.  AIDS,  HIV
> and STD statistics are great pricing factors when considering this community and would
> be a determent to our regular employees with significant rate increases should we allow a
> participant on our policy with such undisclosed cases.

38.     Defendant Egbufor then explains that she will keep Plaintiff off the health plans

because of his sexual orientation by continuing to "stall him until we are able to make the best

possible decision with WTU and its regular [presumably straight] employees in mind."

39.     Ms. Egbufor's email with email addressed redacted is produced below:

## Medical Benefits – Highly Confidential and Privileged

Dorothy Egbufor

Wed 02/15/2017 1:19 AM

To: ███████████

Liz,

We should confer about allowing Barry to take advantage of WTU's insurance benefits since he
confirmed he engages in same-sex intimacy. Never in WTU's past have we allowed any individual to
participate on our group policy "openly gay" and I don't think this should be an exception..

Allowing Barry Hobson benefits will without question open the door to many issues down the road.
Market data shows a substantial premium/rate increase when allowing the LGBT community to
participate in employer sponsored plans, for various reasons. AIDS, HIV, and STD statistics are great
pricing factors when considering this community and would be a determent to our regular employees
with significant rate increases should we allow a participant on our policy with such undisclosed cases.

Barry has inquired consistently about the status of his benefits and I will continue to stall him until we
are able to make the best possible decision with WTU and its regular employees in mind.

Let me know if you have any questions.

In Solidarity,
Dorothy
Dorothy Egbufor, Chief of Staff
Washington Teachers' Union
1239 Pennsylvania Avenue, SE
Washington, DC  20003
Phone:  (202) 517-1477
Fax: (202) 517-0673
████████████████
www.wtulocal6.org
Follow us on Twitter: @WTUTEACHER

40.     Plaintiff was never provided medical benefits despite such benefits being part of his employment package.  As noted, Plaintiff was supposed to receive medical and dental benefits from Defendant WTU starting on or about February 1, 2017.

41.     On or about February 21, 2017, Defendant Egbufor sent an email to Defendant Davis requesting to remove Plaintiff from working at the Shared Vision conference.  Defendant Egbufor stated, "[b]ased on my experience and observations so far, I'm not comfortable having Barry on my team working directly with me at this time.  An attitude adjustment will be necessary before Barry can work on special projects[]."  Plaintiff then was removed from the project.  Defendant Egbufor "Cced" Plaintiff on this email.

42.     Later that same day, February 21, 2017, in response to Defendant Egbufor's email, Plaintiff again requested from Defendant Davis that they meet to discuss Defendant Egbufor's reasons for not "feel[ing] comfortable" with Plaintiff.  In this email, Plaintiff noted that he was being retaliated against for standing up against discrimination against him and that Defendant Egbufor's issues with him were not based upon his "work or job performance."

43.      Later that evening of February 21, 2017, in addition to removing Plaintiff from attending and working at the Shared Visions conference, Defendant Egbufor further diminished Plaintiff's duties by deactivating Plaintiff's access to Bswift.  Defendant Egbufor specifically sent an email to Defendant Davis, Jasmine Wright, whom Plaintiff was to assist on Bswift, and others stating, "[p]lease be advised, Barry's access to Bswift has been disabled.  Under no circumstances, shall you reenable his access without permission from the chief of staff and/or President Davis."  Defendant Egbufor also wrote in the email to other employees that, "[f]ailure to adhere to this directive [taking away Plaintiff's access to the program] will result in disciplinary action."

12

44.     On or about February 22, 2017, Plaintiff became aware that his access to Bswift

had been revoked when he attempted to log on to the program and could not gain access.

45.     On or about that same day, February 22, 2017, Plaintiff sent another email to

Defendant Davis to address Defendant Egbufor's increasingly hostile and retaliatory actions

against him, including the revocation of his Bswift access.

46.     In response to Plaintiff's February 22, 2017 email plea to remedy the hostile work

environment, *Defendant Egbufor*, *not Defendant Davis*, replied:

> Please be advised, your below message and other email messages I received from
> you which exemplify misconduct, confrontational demeanor and insubordination
> have been placed in your official personnel file.
>
> Effective immediately, you are being placed on notice for disciplinary action,
> which may be subject to termination.
>
> Please immediately cease and desist emailing me on this issue.

47.     As a result of this email and continual inaction by Defendant Davis, on or

about on or about February 26, 2017, Plaintiff filed a Charge of Discrimination with the

District of Columbia Office of Human Rights.

48.     On or about March 12, 2017, Defendant Egbufor sent another email to Defendant

Davis that she termed "Highly Confidential and Privileged."[2]  In this email, Defendant Egbufor

specifically noted her belief that Plaintiff has a natural tendency to be insubordinate as that is

"common among his peers in the homosexual community[,]" such that his "nature of resistance"

was "grounds for dismissal."  Therefore, Defendant Egbufor explained that she was going to

recommend to Defendant WTU's board that Plaintiff be terminated soon so that it was within his

probationary period.  She further explained that after Defendant WTU's board terminated

Plaintiff based upon her "recommendation" that his termination would "ease any unspoken

---

[2] This email is not protected by attorney-client privilege or any legally recognized privilege.

discomfort surrounding this sexual orientation matter."

49.     Defendant Egbufor also explained in this email that she was going to have Plaintiff's duties reassigned and his access to "dialogue mailbox" immediately revoked by changing his passwords.  The dialogue mailbox is Defendant WTU's internal email systems used by its members to communicate.  Plaintiff had been given the passwords to the dialogue mailbox since he began his position, and they were then revoked.  Defendant Egbufor specifically noted that this particular email should be hidden and not placed into Plaintiff's "personnel records[.]"

50.     This email, produced below with redacted email addresses, specifically includes language such as:

> This email is not intended for personnel records as it contains confidential and privileged member information. . . .

> The continued challenging of our authority is a violation of WTU's policies and grounds for dismissal. . . .

> Barry's nature of resistance and pushback is common among his peers in the homosexual community and will be an ongoing issue for WTU if not addressed while we maintain authority within the probationary period of employment.  As a result, I plan to recommend termination and immediately begin reassigning the remainder of his job duties to various staff in the coming days.  The board acting on this recommendation will allow opportunity to redirect staff, as well as ease any unspoken discomfort surrounding this sexual orientation matter.

> Further, I will notify Jasmine that the info and dialogue mailbox passwords will be changed and Barry will no longer be allowed access.

Verification of Union Membership

 Dorothy Egbufor

Sun 03/12/2017 2:13 AM

Liz,

This email is not intended for personnel records as it contains confidential and privileged member information.

Jasmine and Barry have clearly taken it upon themselves to initiate a process of membership verification without the consent of management. The continued challenging of our authority is a violation of WTU's policies and grounds for dismissal.

Here is another example of Barry's natural proclivity to take it upon himself to act on behalf of the union. WTU is at risk of accepting accountability for his actions should process not be followed efficiently.

Barry's nature of resistance and pushback is common among his peers in the homosexual community and will be an ongoing issue for WTU if not addressed while we maintain authority within the probationary period of employment. As a result, I plan to recommend termination and immediately begin reassigning the remainder of his job duties to various staff in the coming days. The board acting on this recommendation will allow opportunity to redirect staff, as well as ease any unspoken discomfort surrounding this sexual orientation matter.

Further, I will notify Jasmine that the info and dialogue mailbox passwords will be changed and Barry will no longer be allowed access.

Let me know if you have any questions.

In Solidarity,
Dorothy
Dorothy Egbufor, Chief of Staff
Washington Teachers' Union
1239 Pennsylvania Avenue, SE
Washington, DC 20003
Phone: (202) 517-1477
Fax: (202) 517-0673

www.wtulocal6.org
Follow us on Twitter: @WTUTEACHER

51. Approximately three days later, on or about March 15, 2017, Plaintiff finally got a

meeting with Defendant Davis. Plaintiff intended to address with Defendant Davis Defendant

Egbufor's illegal discrimination against him because he is a homosexual. He also intended to

address with Defendant Davis Defendant Egbufor's illegal retaliation against him (1) for

objecting to Defendant Egbufor's discriminatory treatment against him and (2) for his reporting

Defendant Egbufor's illegal treatment against him through Defendant WTU's internal processes.

But instead, Defendant Davis made excuses for Defendant Egbufor's illegal actions.  Defendant

Davis would not acknowledge that Defendant Egbufor discriminated against Plaintiff because he

is a homosexual or that Defendant Egbufor had retaliated against Plaintiff.  Instead, she said that

Defendant Egbufor had "strong tone" and that Defendant Egbufor should work on not being so

strong with her tone.  Plaintiff insisted that the disciplinary actions against him were because he

is a homosexual, and Defendant Davis responded that she would get back to him.  But nothing

was resolved in this meeting.

52.     On or about March 27, 2017, another duty was removed from Plaintiff by

Defendant Egbufor as Plaintiff was ordered to relinquish his key for the "Presidential Suite "to

Louis Blount, Assistant to Defendant Davis.  The Presidential Suite consists of some limited

areas upstairs in Defendant WTU's headquarters, including the President's office.  Only a select

few staff members are entrusted to have a key to access those areas.  Mr. Blount informed

Plaintiff that he had been instructed by Defendant Egbufor to take away Plaintiff's key.

53.     On or about March 30, 2017, Plaintiff sent an email to Defendant Davis

requesting "follow-up" to his concerns from the March 15 meeting he had with Defendant Davis

concerning Defendant Egbufor's illegal actions against him.  In this email, Plaintiff lays out

many of the illegal actions that Defendant Egbufor took against him, specifically mentions that

Defendant Egbufor is discriminating against him for his "sexual orientation," and that he has

filed with the District of Columbia Office of Human Rights but would like to resolve these issues

internally so everyone can get back to work.  Defendant Davis never responded to this email.

54.     This March 30, 2017 email, redacted for email addresses and gmail headings, is

otherwise produced below in its entirety:

## Request of Follow-up

From: **Barry Hobson**
Date: Thur, Mar 30, 2017 at 8:12 PM
Subject: Request of Follow-up
To: Elizabeth Davis

Good morning President Davis,

I hope this message finds you well.

Per our meeting, we were to follow up on your conversations with Dorothy concerning some very disturbing actions against me that I deem discriminatory in nature.

Those acts include:

- Questioning my same sex relationship on my new hire paperwork
- Disallowing my attendance at The Shared Vision Conference on 2/22/2017 while **all** the other office staff attended.
- Coming into the office on two separate occasions and speaking to everyone except me.
- Taking bswift system access away from me after you granted approval and I completed 8 hours of training on the system. Further; Sending an email notifying everyone of my access being revoked excluding me.
- Changing the password to the "info" and dialogue" email boxes blocking my access when that has been a duty of mine since day one. Notified other staff of the passcode change disallowing me access but intentionally didn't notify me.
- Terminating my participation on the Shared vision data entry project after it was noted and shared I was doing a very good job on it. Simply sent an email stating "your assistance is no longer needed" coincidentally after I sent an email to you requesting a meeting regarding desperate treatment.
- Instructing Louis to take away my key to your office after you instructed him to give it to me as a result of us being locked out of the suite b/c Louis left his keys home. Interestingly, when you gave me the key and instructed me NOT to tell Dorothy or anyone I had it; Yet, Dorothy directs Louis to take the key from me.
- Defaming or bringing into question my integrity on email with other non-office officials to include Lee Jackson, AFT, and healthcare vendors.
- reaching out to everyone except me to notify them of a delayed arrivals on snow days resulting in me getting into work 2 hours early and no one was there.

Additional Concerns:

- President Davis, you stated on several occasions that Louis was "62" and needs more guidance and "us youngsters" have an advantage. I'm not sure what that means but I'm a bit concerned that Louis seems to get preferred treatment based on his age and that too is a concern for me. I am also concerned Dorothy has threatened my job on numerous occasions for no reason at all  yet you explained to me in our meeting that Louis was unethical b/c he used his corporate credit card while on vacation for personal use and yet he was not reprimanded again you stated b/c of his age. These are major major concerns for me.
- Additionally, I expressed concern for me having to be at work so early and coming from Laurel it seemed to be a struggle some time but I still make it in on time. Jasmine Wright asked you standing right in my face if her schedule could be changed b/c since she had the baby its hard to get up and out of the house on time having the baby. Note, as of this date, Jasmine's schedule was changed from 8:00am to 8:30am to avoid her being reprimanded from being late to work. This too is a major concern for me.

Over the past few months President Davis, I have laid out my case and detailed why its seem to be that Dorothy has personal reservations with my sexual orientation. She was overly excited to have me join WTU and the moment she finds out I was in a same sex relationship, I have been excluded from activities, defamed, targeted, look over for projects that I was once assigned to to, I've had work tasks taken away from me and even harassed. I am again begging to meet to settle this so I can have the charges filed with OHR dismissed and we can go on with union work as usual.

I appreciate your time in reading such a lengthy letter and I look forward to your response.

In Solidarity,

Barry Hobson

55.     On or about April 1, 2017, Defendant WTU's board met, and per Defendant

Egbufor's recommendation, voted to terminate Plaintiff.  Upon information and belief,

Defendant Davis, as a voting member of Defendant WTU's Board, voted to terminate Plaintiff.

56.     On or about April 3, 2017, Plaintiff was notified of his termination by Defendant

WTU's board directly by Defendant Davis.

57.     Following Plaintiff's termination, Plaintiff requested a letter of recommendation

from GVP Pogue Lyons to aid his job search.  On or about August of 2017, GVP Pogue Lyons

wrote Plaintiff a recommendation and had nothing but effusive and positive statements to make

about Plaintiff.  This recommendation letter is produced below:

 **Washington Teachers' Union**

*August 29, 2017*

*Dear Hiring Manager,*

*It's my absolute pleasure to recommend Barry Hobson for a Professional Support position with your organization.*

*I thoroughly enjoyed my time working with Barry, and have come to know him as a truly valuable asset to any team. He is honest, dependable, and incredibly hard-working. Beyond that, he is an impressive problem solver who is always able to address complex issues with strategy and confidence. Barry is inspired by challenges, and never intimidated by them.*

*Along with his undeniable talent, Barry has always been an absolute joy to work with. He is a true team player, and always manages to foster positive discussions and bring the best out of other employees.*

*Without a doubt, I confidently recommend Barry to join your team. As a dedicated and knowledgeable employee and an all-around great person, I know that he will be a beneficial addition to your organization.*

*Please feel free to contact me at 240-687-0171 should you like to discuss Barry's qualifications and experience further. I'd be happy to expand on my recommendation.*

*In Solidarity,*

Jacqueline Pogue-Lyons
General Vice President

58.     After his termination, Duanna Petrus, another member of Defendant WTU's Board, was requested to fill out a written questionnaire about Plaintiff's work, which was provided to his current employer.  Ms. Petrus had nothing but positive things to say about Plaintiff.  This questionnaire is produced below:

**Barry Hobson**

*Duanna Petrus, Executive Board Member, Washington Teacher's Union (WTU)*

**Tell me about Barry?**

Came into the office with a lot of ideas. Tried to show people how to do things smarter not harder. Very professional. Tries to keep everyone together. Handles hard issues in a very professional way, it was never personal. People look forward to deal with him. He picks up fast and knows what to do. He jumps in wherever there is a gap. He would be a great asset to any organization he would work for.  He can multi-task.

**What do you know about his commitment to Labor?**

That's his passion. It seems to come natural. It's natural to help our labor people, because that's how he is. His agenda is just to treat people the right way, and fairly. He does the research. Anything he can do to help. He is a self-starter. He is committed. He is loyal. He pushed beyond the dirty laundry. It was all about the members. What can I do to service the members.

**Challenge/Weakness?**

Perfectionist. Very organized. Systematic. Eye for Detail.

59.     On or about January 18, 2018, Plaintiff attempted get a physical copy of his W-2 tax form from the WTU headquarters because one was not mailed to him for 2017 and he needed to submit his taxes.  Plaintiff first confirmed with Defendant WTU's receptionist that he could come pick up a copy.

60.     Upon his arrival at Defendant WTU's headquarters, he buzzed the door to get in but for some reason was not buzzed in.  Another person entered the building, so Plaintiff went up with that person to the lobby area.

61.     Upon knowledge of his arrival at the lobby area, Plaintiff was met by some employees of Defendant WTU in what was a somewhat hostile and confrontational manner and

was informed he had been intentionally barred from the building.  One of the employees also

informed Plaintiff that Defendant President Davis had instructed them via text message to

prohibit Plaintiff's entering of the building ever, even though she had apparently been informed

that he was only trying to collect his W2 for tax purposes.  Plaintiff eventually received a copy of

his W2 outside of the building and then left the area.

62.     For Plaintiff, this final mistreatment, as if he was a pariah, brought up the bad

feelings and memories he had while working at Defendant WTU and caused further anxiety for

him.

63.     During his time at Defendant WTU and after his termination, Plaintiff was in a

state of anxiety and suffered chest pains, sleep disturbances, loss of weight, problems breathing,

and states of panic.  Some of these symptoms are ongoing.

**COUNT I**
**SEXUAL ORIENTATION DISCRIMINATION**
**District of Columbia Human Rights Act of 1977, D.C. Code §2-1401, *et. seq.***

64.     Plaintiff adopts and incorporates by reference the allegations contained in the

preceding paragraphs as if fully set forth herein.

65.     By virtue of the acts described above, Defendants discriminated against Plaintiff

because of his sexual orientation in violation of the District of Columbia Human Rights Act of

1977, D.C. Code §2-1401, *et. seq.*.

66.     By and through Defendants' actions described above, Plaintiff has suffered harm.

WHEREFORE, Plaintiff Barry Hobson demands judgment against Defendants

Washington Teachers' Union, and Elizabeth A. Davis, and Dorothy Egbufor, joint and several,

for an amount to be determined at trial but not less than One Million Dollars ($1,000,000.00), in

compensatory and punitive damages, plus interest, costs, attorney's fees, and further and

20

additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## COUNT II
### SEXUAL ORIENTATION HOSTILE WORK ENVIREMENT
**District of Columbia Human Rights Act of 1977, D.C. Code §2-1401, *et. seq.***

67.     Plaintiff adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

68.     By virtue of the acts described above, Defendants created a hostile work environment for Plaintiff because of his sexual orientation in violation of the District of Columbia Human Rights Act of 1977, D.C. Code §2-1401, *et. seq.*.

69.     WHEREFORE, Plaintiff Barry Hobson demands judgment against Defendants Washington Teachers' Union, and Elizabeth A. Davis, and Dorothy Egbufor, joint and several, for an amount to be determined at trial but not less than One Million Dollars ($1,000,000.00), in compensatory and punitive damages, plus interest, costs, attorney's fees, and further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## COUNT III
### RETALIATION
**District of Columbia Human Rights Act of 1977, D.C. Code §2-1401, *et. seq.***

70.     Plaintiff adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

71.     By virtue of the acts described above, Defendants violated the District of Columbia Human Rights Act of 1977, D.C. Code §2-1401, *et. seq.*, by retaliating against Plaintiff for his protected activity in objecting to the discriminatory conduct he was subject to because of his sexual orientation and for his attempting to report and reporting such illegal

activity through Defendant WTU's internal reporting process as well as to the District of Columbia Office of Human Rights.

72.     WHEREFORE, Plaintiff Barry Hobson demands judgment against Defendants Washington Teachers' Union, and Elizabeth A. Davis, and Dorothy Egbufor, joint and several, for an amount to be determined at trial but not less than One Million Dollars ($1,000,000.00), in compensatory and punitive damages, plus interest, costs, attorney's fees, and further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## JURY DEMAND

Plaintiff demands a jury for all issues proper to be so tried.

Respectfully submitted,

JOSEPH GREENWALD & LAAKE, P.A.


_____
Brian J. Markovitz (Bar No. DC481517)
Mathew E. Kreiser (Bar No. MD0053)
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
301.220.2200 (T)
301.220.1214 (F)

*Counsel for Plaintiff Barry Hobson*